15628

McCLARY *ET AL.* v. MITCHUM *ET AL.*

(29 S. E. (2d), 329)

July, 1943.

*Mr. S. E. Rogers,* of Summerton, S. C., Counsel for Appellants,

*Mr. T. Pou Taylor,* of Columbia, S. C., Counsel for Respondents,

March 2, 1944.

MR. ASSOCIATE JUSTICE FISHBURNE delivered the unanimous Opinion of the Court:

This suit, as originally instituted, was for the foreclosure of two real estate mortgages, the first cause of action being for the foreclosure of a mortgage dated March 3, 1928, executed by E. P. Mitchum and Elizabeth Mitchum, his wife, to the Bank of Santee, in the principal sum of $430.00, bearing interest from date at the rate of eight per cent. per annum, and covering all the lands owned by the mortgagors—85 acres, 12 acres, and 19 acres. The second cause of action sought the foreclosure of a mortgage dated March 19, 1927, executed by Elizabeth Mitchum to the Bank of Santee, in the principal sum of $460.00, drawing interest from date at the rate of eight per cent. per annum. This mortgage covered the 19 acres of land included in the first mortgage mentioned.

It was alleged that both mortgages, and the bonds which they secured, were assigned to the plaintiffs by the Bank of Santee, and that nothing had been paid thereon. The plaintiffs likewise claimed certain amounts paid by them and secured by the mortgages, for insurance and taxes. As will be later adverted to, the second cause of action, involving the mortgage given in 1927, was withdrawn.

Both mortgagors died some time in the year 1933, so that when the complaint was served, in March, 1942, their heirs at law—none of whom lived on the property—were made parties defendant. They set up various defenses; denied the execution of the bonds and mortgages as set out

in the complaint; denied that the plaintiffs were the owners and holders thereof; alleged that the mortgage given in 1928, if executed, was given to take up in whole or in part the mortgage given in 1927; alleged payment by reason of the wrongful entry by the mortgagees upon the real estate in question; the removal of buildings therefrom, cutting of timber, and collection of rents and profits.

By way of counterclaim, it was alleged that the plaintiffs took possession of the premises as mortgagees, collected the rents and profits, and damaged the premises by removal of buildings and timber, and prayed for an accounting and for judgment in the sum of $3,500.00.

The plaintiffs entered a general denial of the counterclaim, after which the cause was referred to a special referee under a general order, to take the testimony, hear and determine all issues of law and fact, with leave to report any special matter.

Before any reference was held, the special referee, upon motion of the plaintiffs, passed an order on October 16, 1942, allowing them to amend their reply relating to the counterclaim. By their amended reply, the plaintiffs admitted that after taking possession of the property, they had received from rents, profits and sale of timber sums aggregating $718.50, but alleged that this money had been duly applied and credited upon an indebtedness secured by a mortgage covering a portion of the mortgaged property, given by E. P. Mitchum in 1918 to S. Oliver O'Bryan, subsequently transferred to the Bank of Santee, and thereafter assigned by that Bank to the plaintiffs. The plaintiffs also alleged that they had long since fully accounted for all such monies received by them. The mortgage and bond referred to in this amended reply, given in 1918 by E. P. Mitchum to Mr. O'Bryan, 24 years prior to the institution of this suit, will be hereafter referred to as the 1918 bond and mortgage.

A reference was held and the testimony taken in the cause on February 6, 1943. At the commencement of the hearing, plaintiffs, without previous notice, moved for permission to amend their complaint by withdrawing the second cause of action based on the 1927 mortgage, and adding to the first cause of action an allegation to the effect that the 1928 mortgage therein sought to be foreclosed, contained a clause securing all indebtedness then existing or subsequently contracted, and that under such clause there was secured by said mortgage an additional indebtedness of $1,000.00, plus interest. They claimed this amount as being the balance of the principal due on the bond referred to as the 1918 bond from E. P. Mitchum to O'Bryan.

The plaintiffs conditioned the withdrawal of the second cause of action, relating to the 1927 mortgage, upon the granting of their motion for amendment. They refused to eliminate the 1927 mortgage unless they were permitted to set up by way of amendment this additional alleged indebtedness of $1,000.00, although it seems quite evident that Mr. McClary knew then, as later appeared in evidence by his own admission, that this 1927 mortgage had long since been liquidated. The amendment was allowed, and the plaintiffs thereupon dealt only with the 1928 mortgage which was given to secure the principal sum of $430.00, and the alleged additional sum of $1,000.00 they at that time injected into the case.

The referee decided the issues in favor of the plaintiffs. On the 1928 mortgage he found that there was due for principal and interest, $615.22, and on the O'Bryan bond, for principal and interest, $2,622.40. After deducting the admitted credits, he found a balance due the plaintiffs of $2,443.26, plus attorney's fees.

Upon appeal to the Circuit Court, the referee was reversed. The Circuit Judge, after a full review of the evidence, held, *inter alia*, that the 1918 mortgage indebtedness (O'Bryan bond) was paid. And after giving credit to the

defendants for the admitted amounts received by the plaintiffs from rents, profits and the value of timber sold less taxes paid by plaintiffs, he awarded judgment against the plaintiffs in the sum of $92.84, and the costs of the action.

The plaintiffs have appealed upon several grounds, but we think the whole matter may be disposed of by a determination of the question as to whether or not the 1918 indebtedness was paid prior to the execution of the 1928 mortgage.

It is suggested in appellants' brief that much of the value of the testimony on this issue would have to be determined from the manner, appearance and demeanor of the witnesses on the stand, which would not be reflected in the written record; and for this reason the referee's conclusions would be far more accurate than those of the Circuit Judge. The special referee undertook no discussion or review of the evidence taken before him, nor does he state that his conclusions were in any way influenced by the demeanor of the witnesses. In his report we find only his ultimate findings of fact. The testimony was taken stenographically and transcribed, and the Circuit Judge dealt with it at length. See *Baylor v. Bath*, 189 S. C., 269, 1 S. E. (2d), 139. Upon a thorough examination of the entire record, we are of the opinion that the circuit decree should be affirmed. The record will have to be reviewed from the beginning; the history and background of this transaction throw much light upon the point at issue.

The Bank of Santee was organized in 1917, and continued in business until the year 1930, when it sold all of its assets—except what one of the plaintiffs refers to as the "odds and ends"—to the Peoples State Bank. During all of this period the plaintiff, Mr. McClary, was president and his co-plaintiff, Mr. Davis, was cashier. The plaintiffs testified that there were five or six mortgages in the loan portfolio of the Bank of Santee which were considered undesirable by the Peoples State Bank; that the Mitchum

mortgages—1918, 1927, and 1928—were included in this small batch of loans. That they purchased these papers, including the Mitchum mortgages, from the Bank of Santee, borrowed the money from the Peoples State Bank, and put the papers up as security.

Mr. Davis testified that he as cashier, without a meeting of the directors of the Bank of Santee authorizing it, transferred the Mitchum papers in the name of the Bank to himself and Mr. McClary. He said that he was empowered to do this under the by-laws. Whether they in turn actually assigned them to the Peoples State Bank for the loan they secured, and later obtained a reassignment from that bank, does not appear, but it seems to be assumed. The plaintiffs said that they were unable to prove payment to the Bank of Santee by any written record, but asserted that they had paid the bank for the Mitchum papers. Nor could they recall, under cross examination, how much they paid for the Mitchum mortgages.

When this action was commenced, the 1918 mortgage—then 24 years old—was not mentioned in the complaint. The plaintiffs were unable to introduce in evidence any of the original bonds and mortgages given by the Mitchums, and hence were forced to rely upon the record of those mortgages in the Clerk of Court's office. Mr. Davis said he last saw the originals in 1934, in the storage vault of the then defunct Bank of Santee, where he and Mr. McClary kept their papers; that thereafter he had made diligent search, but had been unable to find any of them.

It appears that the Peoples State Bank, the purchaser of the assets of the Bank of Santee, failed about the year 1934, and its affairs were placed in the hands of receivers. The records of the Bank of Santee were thereafter destroyed by Mr. Davis in 1936 or 1937, by direction of the receivers, for whom he was then working. Mr. McClary testified that he learned in 1941 or 1942 that the records of the Peoples

State Bank had been destroyed, and that the present fore-closure proceeding was soon thereafter brought.

Possessing none of the original papers, the plaintiffs instructed their attorney to go to the records, look up the Mitchum mortgages, and to foreclose whatever he found. Mr. McClary first stated that he told their attorney what Mitchum mortgages they owned, including the 1918 mortgage; but later admitted that he had told him nothing specific—only to go to the records in the Clerk's office.

The records showed that the 1927 and 1928 mortgages given by the Mitchums to the Bank of Santee were recorded; so also was the 1918 mortgage given by Mitchum to O'Bryan—including the assignment from O'Bryan to the Bank. But there were no assignments of record to the plaintiffs. They contended that the transfers to them were endorsed on the back of the lost originals. As already referred to, no mention of the 1918 mortgage, which in amount—principal and interest—was four times greater than the 1928 mortgage, was made in the action as brought.

Prior to the reference, and before the plaintiffs' reply was amended, the attorney for the defendants, Joe Mitchum, a son of the deceased mortgagor, and the plaintiffs' attorney, met with Mr. McClary in the latter's office for the purpose of discussing the amount due, if any, to the plaintiffs. On this occasion Mr. McClary made no reference whatever to the 1918 mortgage or any amount due thereunder, although he later said in his testimony that he then knew of the existence of the 1918 mortgage, and had it in mind. Nor did he tell defendants' attorney in that meeting that the indebtedness represented by the 1927 mortgage had been incorporated in the 1928 mortgage and no longer had any life. Recollection of this came to him later. At this conference he insisted that the total amount represented by the 1927 mortgage was due. In fact, it was Mr. McClary who verified the complaint, but he could not remember whether he had read the complaint which sought the foreclosure of the 1928 and

the 1927 mortgages, before signing the verification. Both plaintiffs testified that it was the practice and custom of the Bank of Santee when taking a mortgage from a customer or borrower, to include all prior indebtedness in the last paper.

Although Mr. McClary stated that he had given no intelligent thought to any of the Mitchum transactions, he and Mr. Davis recalled very positively that $325.00 had been paid on the 1918 mortgage to the Bank before the assignment to them in 1930, which left a balance due of $1,000.00 with interest. They also recalled that the interest on this indebtedness had been paid annually up to 1930. They had no records, and testified entirely from memory.

The defendants offered the testimony of Mr. H. J. Bomar, an old business friend of the mortgagor, Mr. Mitchum, who said that some time in the year 1924, Mr. Mitchum came to him with a letter or statement he had received from the Bank of Santee, demanding either settlement or a new mortgage. Mr. Mitchum handed him some money which he believed he supplemented with some of his own, and he then paid it to the bank; he could not remember what officer of the bank he paid the money to. He was uncertain about the amount, but it was some three or four hundred dollars. Mr. Bomar frankly admitted the difficulty of remembering in detail a transaction which had occurred so long before, but stated positively that the amount he paid the bank was in full settlement of the mortgage indebtedness; and his impression was that the settlement was effected by compromise. When discussing the matter, Mr. Mitchum, he said, had become profane and intimated that there was something wrong about the mortgage. Mr. Bomar stated that the Bank delivered to him a mortgage of real estate marked satisfied, and it was his recollection that it was the O'Bryan mortgage which he paid. He said, "It was the finish of that item." It is admitted by both sides that at that time—in 1924—the Bank of Santee held no mortgage of real estate

of Mr. Mitchum except the O'Bryan mortgage, which is referred to as the 1918 mortgage.

With reference to the payment, while it was owned by the bank, of $325.00 on the principal amount of the 1918 mortgage, Mr. Davis stated when first upon the stand, that he did not know when it was paid to the bank of which he was at the time cashier, but stated definitely that it was not paid to him. However, after Mr. Bomar had testified and Mr. Davis was recalled to the stand, he testified from a memory apparently unclouded by doubt, that not only did Mr. Bomar pay to him as cashier the $325.00 as part payment on the 1918 mortgage, but he remembered the contents of the letter which the bank had written to Mr. Mitchum, and which the latter had taken to Mr. Bomar in 1924. Mr. Davis said that he wrote the letter, and that the letter was a demand on Mr. Mitchum to reduce the principal of $1,325.00 to $1,000.00 if he expected the bank to continue the obligation. That thereafter Mr. Bomar came in and gave him his check for $325.00.

When it is recalled that this was merely a routine transaction, doubtless preceded and followed by hundreds of others in the course of the bank's normal business, and that it occurred about 18 years prior to the reference, this testimony seems to refute the commonly held belief that memory is fallible.

That a thing forgotten on one day may be recalled on another, by attentive and careful recollection, or by conference with other witnesses to the same facts, is an irregularity in the process of memory which Courts fully recognize. Still, Courts are accustomed to inquire by what means a memory once confessedly faded, was revived, and, unless the answer is satisfactory, the testimony of the witness may be lightly regarded or rejected. 32 C. J. S., Evidence, § 1026, p. 1066.

That Courts discover frailty of memory in a witness, or preternatural tenacity, is no imputation against his veracity. No insinuation is necessarily cast against the honesty of interested parties by making some allowance for fluctuating memory, and none is intended here. It is not difficult to imagine that even honest men may be led erroneously to persuade themselves that the fact accords with their inclination concerning it. If, however, the plaintiffs have at different times given different versions of the same transaction or of incidents leading up to it, as their interest seemed to require, no complaint can be made of the failure to give their testimony the weight to which it would otherwise be entitled.

When we consider the entire history of the Mitchum transaction in the light of the uncertain, variable, confused and contradictory statements of the plaintiffs, and the legitimate inferences to be drawn therefrom, and the testimony of Mr. Bomar; and remembering that this foreclosure suit was brought years after the death of the mortgagors, we cannot escape the conclusions that the defendants have successfully carried the burden of proving payment of the 1918 bond and mortgage.

Judgment affirmed.

MR. CHIEF JUSTICE BAKER and CIRCUIT JUDGES E. C. DENNIS and E. H. HENDERSON, ACTING ASSOCIATE JUSTICES, concur.

MR. ASSOCIATE JUSTICE STUKES did not participate.